We now move to the next case on the calendar. That is Gonzalez v. United States. Okay, so Mr. Barbanel, you have ten minutes, but you have reserved a minute for rebuttal, so that gives you nine out of the gate. You're free to take your mask off if you'd like, but no worries if you prefer to keep it. Thank you, Your Honor. Good morning to the panel. My name is Gary Barbanel. I represent the plaintiff appellate in the case along with Peter Wessel, who's seated right here next to me. Thank you for allowing me the one-minute rebuttal time, and I'll try to move along as quickly as I can in this main argument. Essentially, what the plaintiff appellate argues in this case is two main points. The first point is that the district judge in this case violated Rule 52A by not explaining the underlying methodology for the damages award indicates. This was a medical malpractice case brought under the FTCA against the VA hospital, and number two, the awards that the district judge did make were erroneous because the manner in which the district judge used comparison cases for comparison purposes did not take into inflation, which it should have been, and he utilized lengths of time for the delay in making a diagnosis as a factor. I did want to talk about that, but before we even go there, I guess I had a question for you, a basic question. If this had been a jury trial and the jury came back with that number, would you be arguing that that jury verdict, that award, should be overturned as inadequate? Yes, I would. Yes, I would, Your Honor. Would you want me to tell you why? No, I just want to sort of figure out where you are on that. Yes, I would. If I could just follow up on that. Sure, Your Honor. In considering the amount of the jury, well, the thing about jury verdicts is we don't know what the reasoning is. We wouldn't know whether they accounted for inflation or any of that, you know, unless those things were argued in summation. But what is our standard of review? Are we looking at whether the number is so low it shocks our conscience, or is it a material deviation standard? Your Honor, thank you, Judge Chan. I was anticipating that question. The standard of review is de novo review for the district judge's violation of Rule 52A. He clearly violated 52A. He gave no explanation whatsoever for the amount of money that he awarded. And that's directly in conflict with the Henry case. It's directly in conflict with our judge, our then judge, Judge Sotomayor, who wrote an opinion and has put out in our briefs that the district judge is required, it's a mandatory requirement for him to explain the methodology. So I believe, Your Honor, that's de novo review. One of the ironies of being a trial judge is when it was a bench trial, you had to explain how you got there. Whereas if it was a jury trial, the jury wouldn't have to explain. But why wasn't, Judge Daniels wrote a pretty thorough opinion, why was it inadequate? The opinion that he wrote was inaccurate because it never connected the facts in the case to the amount of money that he awarded. And that's directly in conflict with cases that- I understand on page 17 and 18 of his- Page 17 and 18- Yeah, he specifically goes through the evidence that he considered arriving at that amount, right? Yes. I'm speaking over here. Yes, Judge Sullivan, that's on- No, that's Bianca. I'm the handsome one. I'm the handsome one in the middle. I'm sorry, Judge Bianco. You can't tell with the mask on, but- I'm sorry, Judge Bianco. He asks much better questions than I do. Yes, I'm terribly sorry. But yeah, that's in the joint appendix number 133. Right, so why isn't that sufficient? You said there has to be a methodology, but we have never required, even in the context of a bench trial, for there to be a methodology for pain and suffering, which is not conducive to a particular formula. You have to just state the reasons of how you arrived at it, and he certainly did that on pages 17 and 18. You may disagree with it, but it's not a violation of the rule. I disagree that he left off a connection between what he found. In other words, he found certain damages in Mr. Salazar had suffered, like a feeding tube, a lot of time in a rehab place, chemotherapy, the inability to eat, and all those factors. But he never connected those, he failed to articulate any connection between that and the dollar amount. What does it mean to say he didn't connect them? because he goes- Hold on. I'm sorry. He goes through all those facts, the facts you just mentioned.  And 18 in that one. What does it mean that he doesn't connect that to his- He doesn't compare, he has to be able to compare it to other cases to find out whether or not it accurately reflects. And he does that on page 18, and then he comes up with his number. Yes, and those cases that he compared with were erroneous comparisons.  And two, because they took into account the period of time that happened during the delay in between the time that Mr. Salazar should have been diagnosed and the time that he was, no pain and suffering is being- You know, when we're asking questions, you should stop and let us answer. I'm sorry, yeah. If you don't answer our questions, it's not good. Does the law require taking inflation into account? Yes, it does. The DeSorbo case. The DeSorbo case, which we cited in our brief, says that you must take into account inflation. And I have that cited in our briefs. It's DeSorbo versus Hoy. And like I said, it's cited in the brief. I don't have the site in front of me right now. But that's the name of the case. It's cited in your brief. And a judge in a bench trial has to make that calculation with respect to any comparator cases. That's what the case says? Yes. Under the DeSorbo case- There is no case that says that. Read the line from that case that says you have to consider it. Many courts do consider it. Where does it say you must consider inflation in considering comparable cases? Read that line. The DeSorbo case, a Second Circuit case, says that he must take inflation into account when he's comparing awards. Are you reading from the case? I'm reading from my notes, John. Okay. And besides that, it makes sense. I don't think it stands for that problem. I don't have the case in front of me. But we looked at all the cases you cited, and none of them say you have to. Obviously, a lot of courts do. But no case says you must. But doesn't it make sense, Your Honor? I mean, how can you compare a case from 1950 or 1970 without- A lot of things go into consideration. You're not considering one case. You're not just considering the present value. You're considering a lot of different things. So I understand your point, and it may be a good idea to consider inflation. But the question is whether it's an abuse of discretion not to consider the inflation coming up with your amount, right? No, sir. I don't think so under the DeSorbo case. I think it's my understanding, and I read the case as well, that it says that you must take inflation if you can. It's not a discretionary matter. He might very well have, right? He just didn't say it. I mean, I think as you're suggesting, it's a matter of common sense. If there's an award from 30 years ago, you would factor in that, yes, it's now 30 years later. Yes, that makes sense. But we don't know that he didn't do that, in other words. You're saying it would have been better if he explained it. Right, he didn't explain it. All he did was give us a one sentence answer at page 18. Considering everything here, and comparing the cases of Man Mandel and Olson, the court finds $850,000. Do we look at whether his award is so low that it shocks our conscience? Does that enter into the picture at all? Judge, the shocking, we apply state law. State law is whether or not it deviates materially from what would be reasonable compensation. The shock to conscience test was abandoned in state court years and years and years ago. I think it still applies in federal court. And I know that we're in this odd situation where it's a federal statute, we're looking at state law. But on some of these procedural issues, you still go with federal law, I believe. Now, it's my understanding, Your Honor, the state court law applies. And the state court, in this case, whether or not deciding whether or not the award is adequate or inadequate, is whether or not it reasonably deviates from what would be material compensation. And we say that it does. So, but it seems to me we could agree with you that this decision from Judge Daniels was not sufficiently detailed. In other words, it didn't comport or comply with Rule 52 without agreeing with you that the number is necessarily either shocking the conscience or materially deviating from state law, right? That's possible, Judge Sullivan. That's very possible that that could happen. But I would like to go one step further than that. What Judge Daniels did in the lower court was that he specifically says, he explicitly says in the second order that he took into account the amount of delay time in comparison. Why isn't that relevant if you're deciding proximate cause, right? Hold on, let him finish, let him finish, Mr. If you're deciding proximate cause, let's say the delay was only a week. There was only a delay in diagnosing it for a week. Wouldn't that be relevant as to how much the ultimate pain and suffering, the length of the ultimate pain and suffering after that was caused by the delay if it was only a week? Thank you, Judge Bianco. I'm fully prepared to answer that question. Okay. There's two cases, two situations. One case is the McDougall versus Garber case, a state court case that was decided probably 30 years ago. It says in order to be compensated for pain and suffering, there has to be a conscious awareness of pain and suffering. If you're not aware that you have pain and suffering, then it doesn't mean anything. It means nothing to be in a delay situation. The man doesn't know he has cancer. They misdiagnosed him by not doing a CAT scan after an x-ray told him to do a CAT scan. Ten months goes by- You're missing my point. My point is that if it's a very short period of delay, the suffering that was caused after that, it was only a small contributing factor because it was only a brief period of time. It's not whether he was aware of it or not. It's how much the delay resulted in the pain and suffering. Do you understand my point? Maybe I'm mistaken. We said, for example, in the Brooks v. Brattleboro case, we sent a case back for the jury to consider damages. And we said it's important in considering this issue for them to consider the reason for and the effect of the delay in the diagnosis and the treatment, issues crucial to liability as well as to damages. So the delay in treatment, the length of it, how much it contributed to ultimate pain and suffering, whether that pain and suffering would have happened anyway, certainly the length of the delay is important. Judge, I would point out the pattern jury instructions. I think it's 2.350, which states specifically in order to make an award for pain and suffering, there has to be a conscious awareness of pain and suffering. I don't think that's the point, though. I mean, I guess- This is cosmic cause. This is cosmic cause. The question is- Causation was already decided by Judge Daniels. This is not a causation issue. Judge Daniels decided while they admitted liability- How much of the damages, how much of the pain and suffering was proximately caused by the delay is something he has to decide, right? Even if there was a proximate cause, how much of it was caused by the delay is the key thing that he had, one of the key things that he had to consider in assessing damages. It's a hard thing to do, but there are cases that talk about that. The whole idea of the last chance doctrine, this was the last chance for discovery of this, this is not a new concept, in other words. Judge Bianco, the loss of chance doctrine doesn't apply in this case. The loss of chance doctrine only applies if the person is still living. And if the person is still living- I'm just using that as an example of how the delay contributes to the issue of how much damage is proximately caused by the delay. I'm not suggesting that doctrine applies here. I'm just trying to explain to you how the delay is relevant to the proximately caused damages, but I think we're going in circles at this point. Well, I respectfully disagree, Judge Bianco, that the length of the delay, he's not having any pain and suffering during the delay. He doesn't know he has cancer. How does he have any pain and suffering? Can I ask a question, though? I mean, it would seem to me that the delay in diagnosis might be linked to the likelihood of him getting this disease and having this pain and suffering anyway, right? And so there was an expert, I think, at trial that said, had the diagnosis taken place promptly, it would have been a 48% chance of recovery or successful treatment versus the delay, which led it to drop down to 12%. Am I right about that? Well, I think what you're referring to and Judge Sullivan, both experts, both on the plaintiff's side and on the defendant's side, said that if it had been diagnosed in October of 2015, the treatment would have been surgery, and he would have had a reasonable chance of cure. I'm sorry, I didn't mean to interrupt. That's okay. But so I think my point is that the delay in diagnosis is linked to the likelihood of recovery, but it's never all or nothing, and it's not typically binary. So there may be cases among the comparators where a prompt diagnosis would have meant a 90% chance of cure, whereas in this case it was a 50% chance of cure. And wouldn't that arguably be relevant to the damage award? I would say no, Your Honor, because under the state law, the standard is whether or not the delay, more than likely, was a substantial contributing factor to the pain and suffering. Well, I think there's liability and then there's damages. And so it would seem that clearly the liability was found. Judge Daniels found liability, right? He found that it was causation. Well, two years after it happened, the VA admitted liability. Exactly, but this is all about damages. It seems to me that delay of diagnosis could be relevant. But I think your argument is that we don't know whether it was or wasn't, because Judge Daniels didn't talk about it, right? Well, he utilized the case, and he said in his order, in his second order, that he explicitly considered length of delay. He used the word explicitly. Well, he did, and then he compared the delay in the other comparator cases, right? The delay of diagnosis in those other three cases. That's error, Judge. I think that's error, and it violates the McDougall case, and it violates the PGI instruction. I mean, I think that if you don't have, this is like the McDougall case sprang out of brain damage baby cases. Where if a child, an obstetrical case, if a child was born brain damaged and had no cognizance or no awareness, there would be arguments that, well, you can't award damages for pain. So your argument, whether there's a week of delay or two years of delay in discovery, it doesn't affect the damages at all. You shouldn't even look at that. It has no effect on the damages, whether it's a week of delay or two years of delay. Is that your position? That's exactly my position, Judge Bianco, because the man doesn't know he has cancer. He doesn't have the emotional suffering. He doesn't have any of the physical suffering. He doesn't go to chemotherapy. You're missing the whole point of proximate cause. It's nothing to do, and Judge Sullivan was going through with you how it could matter on proximate cause. You're missing the point on that, but. Forgive me for interrupting. Judge Daniels in the lower court already decided causation. Causation is not an issue here. Causation goes to the level of damages to how much it caused the pain and suffering that resulted, or would it have happened anyway? How could you say that when the man doesn't know he has cancer? Okay, bonus sentence. So let's, we've gone way over, but sometimes we do, and obviously we had questions. But assuming there are no other questions from the panel now, you've reserved a minute of rebuttal. We'll now hear from Ms. Dow. Am I pronouncing that right? Yes. Okay, Ms. Dow, you've got ten minutes, but more if we need it. Good morning, and may it please the court. My name is Rachel Dowd, appearing on behalf of Defendant Appellee of the United States. Plaintiff's appeal is, at its heart, an attempt to second guess the district court's exercise of its broad discretion in awarding damages. And increase what was already a nearly $1 million damages award. Look, I think we get all that. I guess the question is, does a judge have to do more? I mean, so Judge Daniels was very thorough in explaining what the suffering was and going through in detail what both the decedent and his widow had to endure. But then the number kind of just pops out. He talks about three cases, each of them basically for larger awards than what he awarded. And he doesn't explain why this award is less than those, or why the number he came up with is justified. What's the harm in just sending it back and say, specify how you got to this number? The harm is that the district court did comply with what Rule 52A requires. As your honors noted, the district court did make detailed factual findings regarding Mr. Salazar's condition and the symptoms he experienced. It did cite comparator cases. It is true that there is no specific mathematical relationship between the facts that the district court found and the award. But that will never be the case for pain and suffering, which is not subject to a specific computation. Well, I don't know. It wouldn't be that hard to just say, okay, the reason this is lower than the others is because the likelihood of a cure was only going to be about 50%, even if there had been a timely diagnosis. Whereas these other cases might be different, and that's the reason for discounting the award. That would make perfect sense. That would explain how the number was arrived at. But right now, we're kind of just guessing, right? It sort of feels like we're guessing the way we would with a jury verdict. I don't think that's the case, your honor. For one thing, the comparator cases are something that a district court can consider as guidelines, but it is not required to follow them. And by the same token, it is not required to justify why the number it arrived at is different than in those other cases. And here, the district court explicitly said that the number it arrived at was based not only on consideration of those other cases, but also on the facts that the district court found. And those facts will never have a precise mathematical relationship. But you seem to be suggesting that a court just has to then just say a number, that we're never going to look behind it unless it is woefully inadequate. Well, that, I think, your honor, goes more to the review of the number arrived at for whether it shocks the conscience or is it an abuse of discretion. Right. I'm saying, putting that aside, though, you seem to be saying that if it's a ballpark number that wouldn't be reversible for shocking the conscience or for deviating materially from other state cases that are comparable, you're saying that basically as long as the judge just identifies what the pain and suffering was, the judge gets to just pick a number. And we'll figure it was carefully done. That's not my position, your honor. The district court did make detailed factual findings. And it stated that the number it arrived at was based on those factual findings. It is true that there is no way to connect in a specific mathematical way those findings to the amount. But that is not required and is not even something that can be done. In the second order, the district court did say he considered the duration of the plaintiff's pain and suffering, the extent and nature of Salazar's injuries, the treatment, and the delay in diagnosing his condition. So that was in follow-up to their motion. In addition to what he said in the first decision, he clarified that those were the things that he considered, right? That's right, your honor. And those were proper considerations and the basis. Why don't you address the delay in the diagnosis? They're saying that's not a proper consideration. Do you want to respond to that? Yes, your honor. So the plaintiff's argument seems to be based on the idea that Mr. Salazar was not experiencing pain and suffering during the period before he was diagnosed. We are not disputing that and the district court did not suggest that he was. The issue, as your honors have indicated, is that the government can only be liable for the amount of damages that it approximately caused. And the length of delay is intimately related to that. As you suggested, if there was a short delay, there is often a lesser decrease in the chance of survival. Whereas if there is a longer delay, that usually has more of an impact on the chance of survival and also the degree of suffering that the plaintiff experiences. So that is why... Yes, I can see the correlation, but there was no discussion of that in the opinion, right? Well, the opinion does cite the length of the delay in the other cases. And in the... Right, but length of time is not dispositive, right? It could be a long delay, but whether it was a short delay or long delay, this person had no chance of avoiding this horrible, crippling, and ultimately fatal disease. It matters. Length of delay matters because of how it would affect one's prospects for survival and therefore avoiding this pain and suffering. But there's nothing like that in here, linking the time of delay and the prospects for survival slash avoiding pain and suffering. Or am I wrong about that? Well, I think in the factual findings, there is a linkage between the length of the delay and the extent to which that decreased the plaintiff's or Mr. Salazar's chance of survival. Which? I think Your Honor was talking about it earlier with the reference to the testimony from the experts. There may be stuff in the record, but I don't think that's part of the damages analysis that the judge did, is it? Well, I think the damages analysis incorporates the prior discussion of the injuries that Mr. Salazar sustained. And the court did, and I guess to your question of whether that factor is dispositive, it's not on its own dispositive. I think the district court's opinion clearly indicates that that is one of the factors, but it cites other factors. So the ultimate figure is a combination of those factors and is ultimately subjective. And then in the district court's opinion after the plaintiff moved to alter amend the judgment, I think the district court does provide a little bit more of an explicit linkage between the length of the delay and the amount. I did also want to address this question of the standard of review for the amount of the damages award. The standard as this court's precedent, and specifically cases relating to FGCA damages awards, makes clear that the standard is abuse of discretion or shocks the conscience. The standard that the plaintiff seems to argue applies asking whether the award deviates materially from what would be reasonable compensation is not applicable in this case under the FGCA. That is language from New York CPLR 5501C, which applies to jury verdicts. And district courts in this circuit do apply that when they are sitting in diversity jurisdiction to review jury verdicts. But even then, the second circuit- Is there a case that says it doesn't apply in an FGCA case? I'm not aware of- Because we're theoretically applying state law in any event. So, yeah. Is there a case that addresses that? I'm not aware of a specific case addressing that. The provision itself does, by its terms, apply to jury verdicts. And the supreme- The CPLR provision you mean? Yes. Yeah, okay. And I guess to the point of the plaintiff's argument that you're applying New York law, that is true in terms of the types of damages that are recoverable and the factors that go into those. It does not mean that New York law dictates the standard of review that this court performs. And so, I do not think that that is the right standard. Even if the court were, to apply the DBA's materially standard, the awards here are within the realm of what is reasonable compensation. Even applying that standard, that would not mean that the number the court arrived at had to be- What do you say to the inflation argument that Judge Daniels didn't at least explicitly take into account inflation? So, I think inflation, as I think Judge Bianco said, is something that courts can take into account and they can explicitly calculate awards in other cases with inflation adjusted for, but they do not have to do so. There is no case law that I'm aware of suggesting that for Rule 52a purposes, that is a requirement. It wouldn't make sense to require that, given that there is no specific mathematical analysis required to arrive at the types of damages awards in this case. So, I think it is certainly something that the court can do, but is not required to do. I would also note, however, here that the plaintiff made the same argument that he is now making about inflation when he moved to alter or amend the judgment, and the district court affirmed the amounts that it previously awarded. I was just going to say, the district court clearly was aware that amounts change over time based on inflation and knew of these arguments when it made its decision. I was going to ask briefly about the loss of consortium, which we didn't talk about in the argument. Maybe on rebuttal we will. But, how about that? I think even in your brief, you can see that that number is even less supported than the pain and suffering number. So, what was the basis for coming up with that number? Could you paraphrase it for me? Explain to me what that number is? How it was arrived at? So, I would just first note that there is less analysis, and that is in part because the plaintiff did not focus on that issue at trial and attempted to substitute. So, I guess that's my question. So, if the parties focus less on it at trial, the judge has less of an obligation to provide an explanation for the number? The court still does need to provide some explanation, and the explanation that it provided here... Was that they were married 50 years? That was one element. I do think... What else did he rely on? Well, I think the factual findings in the opinion do obviously inform the amount of the award. So, I think it is all of the facts that were found in the opinion regarding the plaintiff's relationship with Mr. Salazar, including the length of their marriage. Again, it is true that that number was not derived in any specific mathematical way that is apparent, but that is not required by Rule 52A. I guess I'm not saying mathematical. I'm just saying an articulation as to how a number was arrived at, just stating the factors. There's none of that here. You're saying that if it's in the opinion that describes the pain and suffering, that we can presume that the judge considered it in reaching a determination about loss of consortium damages? I think that's a fair assumption here, given that the factual findings detail elements of Mr. Salazar's condition and the plaintiff's relationship with him. And certainly, the court could have said more, but that does not mean that Rule 52A requires that or that that's a basis for vacating the award. Okay. Unless there are other questions, we'll hear from Mr. Barbanel for one minute of rebuttal. Thank you, Your Honor. Thank you. Forgive me. I asked the panel to forgive me. I don't like doing this, but I have to. Here's the DeSorboy case. It's written at 343 Fed Third 172 on page 10. When considering the sizes of awards in earlier cases, we must take into account inflation. Now, before, when I was giving my principal argument, I think it was someone on the panel said that we read through all the cases and we couldn't find anything that said that. That must have been Bianco, because he reads those things. I had my mask on. I'll be happy to leave it with you. No, we know how to find it. I'm looking forward to reading it. All right. That's on page 10. Now, with respect to inflation, we know that Judge Daniels, the district judge, did not consider inflation because the three cases that he used for comparison purposes, Mann, Mandel, and Olson, one was for $1.25 billion for 20 months. Another one was for $2.0 million for 26 months, and another one was for $700,000 for seven months. If you adjust those cases for inflation, given the dates of the cases, one case was 20 years old, one case was three years old, and one case was 10 years old, and you use a methodology of figuring out how much per month the damages would be, Mann is $66,000 a month, Mandel is $100,000 a month, and Olson is $137,000 a month. The numbers that Judge Daniels figured in this case, $850,000 over 24 months of pain and suffering, comes out to $36,000. This is less than one half, or around one half, of the lowest cases that he compared. So we know that he didn't take inflation into account, and that's an error. You're suggesting it has to be done on a monthly basis? Is that what you're saying? It doesn't have to be done on a monthly basis. Those cases were calculated on a monthly basis at all. You're using that measure. Judge Bianco, you can do it on a daily basis, you can do it with the totality of the circumstances, the several cases, the cases that I would refer to. So what I'm suggesting to you is you shouldn't measure the gross deviation based upon a monthly average, if maybe that's not how these figures are arrived at. You could use any method you like. The number of $850,000 over 24 months is lower than all of them. So he didn't use inflation, and he didn't properly apply those, and that's an error. The cases are correct. Well, he may have, we just don't know, right? He may have done exactly what you just did in the delay and the likely correlation between the ability to cure or avoid the pain and suffering. We just don't know, right? No, we do. You know that he didn't consider inflation? Yes. Did he say, I didn't consider inflation? He didn't say that in his opinion, no, sir. But what he did do, if you figure out the numbers, you know that with inflation, the numbers were so much higher. Clearly, clearly, no one would dispute that. That's just a fact. But we don't know why he discounted below those three other cases as adjusted for inflation. We just don't know. Well, he didn't adequately use comparison purposes. He didn't compare apples to apples. You have to compare apples to apples when you compare cases. You can't figure out apples to oranges. You can't just say, well, these cases are this, and this case is that. You have to have an objective frame of reference. You can only rough it, because there are going to be so many differences. Their ages, their personal circumstances, the injuries, how long. And it's hard to say, this case has got to be exactly the same on a monthly basis as the other one, because there's so many different factors. And you're looking at them, you know, it's really in the ballpark. It's in the ballpark type of analysis is what we're talking about. Well, one of the cases Malibu said, you can't do that. You can't just figure out a number that's in the ballpark. You can't just take a number that's in the range. Or Malibu can. I mean, you do an Excel spreadsheet, and you do age, length, injury. And you, I mean, it doesn't seem to make sense. You might as well throw darts at a dartboard if that's how you're going to do it. But you can't do it that way. Well, I don't think anyone would suggest you can do it that way. But all right. Well, we've gotten our money's worth in argument. Thank you very much. Thank you. So that we will reserve decision.